UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| AUGUST ANTHONY FORD, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | No.: 1:16-CV-282-CLC |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

# **MEMORANDUM**

Federal inmate August Anthony Ford has filed a motion, as supplemented, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) Respondent has filed a response in opposition to the motion. (Doc. 7.) Having considered the pleadings and the record, along with the relevant law, the Court finds that it is unnecessary to hold an evidentiary hearing[1], and Ford's § 2255 motion (Doc. 1) will be denied.

## I.  BACKGROUND FACTS AND PROCEDURAL HISTORY

After a traffic stop on April 14, 2009, law enforcement agents found a firearm wrapped in a t-shirt in the engine compartment of a car driven by Ford (Doc. 40 p. 19, 24 in No. 1:13-CR-98). Ford initially denied knowledge of the firearm, but the next day, he admitted to possessing the firearm, saying that he had purchased it from someone known as "Red" for "about $200" (*id*. at 37-40). Ford was later implicated in multiple robberies, including the robbery of a CVS Pharmacy on October 6, 2010 (*id*. at 48-55); the East Lake post office on January 15, 2011 (*id*. at 55-56); the

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

In-Town Suites hotel on February 12, 2011 (*id*. at 56-60); the Golden Mart Beauty Salon on March 9, 2011 (*id*. at 61-63); a Red Roof Inn on March 26, 2011 (*id*. at 64-66, 72-76); and a Cash Express check-cashing store on April 29, 2011 (*id.* at 77-78). A particular modus operandi for at least three of the robberies was discovered, whereby a lone gunman would enter a business, order the victims to the floor, and make physical contact with the female victims, often groping their breast area (*id*. at 53, 57, 64, 77).

Because the robber had stolen the hotel clerk's phone during the Red Roof Inn robbery, agents subpoenaed phone records for it, compared the calls after the robbery with records for a phone they knew Ford to have used, and found three phone numbers in common, one of which was the place where Ford's mother was employed (*id*. at 73-76). Investigators subsequently placed a GPS tracking device on Ford's car on April 23, 2011 (Doc. 40 p. 76 in No. 1:13-CR-98; Doc. 72 p. 33 in No. 1:11-CR-42). When investigators learned that the April 29, 2011, robbery of the Cash Express check-cashing store matched the modus operandi of the other robberies under investigation, they accessed the "live feed" of the GPS tracker – for the first time – and discovered that Ford's car had been within 200 or 300 yards of the Cash Express store when the robbery occurred (Doc. 40 p. 77-78 in No. 1:13-CR-98; Doc. 72 p. 35 in No. 1:11-CR-42). Investigators then used the GPS tracker to find and arrest Ford, approximately three hours after the robbery (Doc. 40 p. 78 in No. 1:13-CR-98).

At the time of his arrest, Ford had the distinctive jewelry of a Cash Express employee in his pocket, along with approximately $800 in cash (*id*. at 78-81). Receipts in his car showed that, between the robbery and his arrest, Ford had spent several hundred dollars, paid child support, and deposited money in his bank account (*id*. at 81-85). Based on the GPS information that Ford had gone to his mother's house after the robbery, investigators searched that home and located two loaded semi-automatic firearms among Ford's belongings (*id*. 85-87).

Thereafter, a grand jury charged Ford with five Hobbs Act robberies, the armed robbery of a post office, and multiple violations of 18 U.S.C. §§ 922(g) and 924(c) (Doc. 33 in No. 1:11-CR-42). Ford moved to suppress the firearm recovered from his car, his confession about owning that firearm, any evidence from the search of his residence, and any evidence from the GPS tracking device that law enforcement agents had attached to his car (Docs. 41, 59, 64, 65 in No. 1:11-CR-42). After an evidentiary hearing, the magistrate judge recommended denial of Ford's motions (Docs. 70, 72 in No. 1:11-CR-42). Over Ford's objection, this Court denied the suppression motions (Docs. 74, 75 in No. 1:11-CR-42).

Because of a Speedy Trial Act violation, the initial case against Ford was dismissed without prejudice (Doc. 115 in No. 1:11-CR-42). The United States thereafter obtained a new indictment reiterating the charges in the previous indictment and charging another Hobbs Act robbery and related firearms counts (Doc. 8 in No. 1:13-CR-98). At Ford's request, this Court incorporated the pretrial proceedings from Ford's initial case into this case (Doc. 19 in No. 1:13-CR-98).

Ford proceeded to trial in January 2014 and was convicted of five counts of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g), four Hobbs Act robberies in violation of 18 U.S.C. § 1951, the armed robbery of a postal employee in violation of 18 U.S.C. § 2114(a), and four counts of using, carrying, and brandishing a firearm during an in relation to crimes of violence in violation of 18 U.S.C. § 924(c)(A)(ii) (Doc. 31 in No. 1:13-CR-98). Ford was acquitted of the CVS Pharmacy and Golden Mart robberies and corresponding firearms counts (*id.*).

On May 8, 2014, Ford was sentenced to a term of 1,164 months' imprisonment: concurrent terms of 180 months for the § 922(g) violations and robberies based on Ford's armed career criminal status, followed by consecutive term of 84 months for the first § 924(c) violation, and 300 months for each of the other three § 924(c) violations (Doc. 39 in No. 1:13-CR-98). Aggrieved, Ford appealed, and the United States Court of Appeals for the Sixth Circuit affirmed his

convictions and sentences in April 2015 (Doc. 46 in No. 1:13-CR-98). Ford requested and received an extension of time to file a petition for rehearing, but no such petition was ever filed (Sixth Circuit Docket Sheet, No. 14-5584). In August 2015, Ford purported to file an untimely petition for certiorari in this Court (Doc. 53 in No. 1:13-CR-98).

In June 2016, Ford filed the instant motion to vacate or correct his federal sentence pursuant to 28 U.S.C.§ 2255, which he supplemented with additional claims in September 2016 (Docs. 1, 6). The United States thereafter complied with this Court's order to respond to the motion, filing its response on October 29, 2016. (Doc. 7). Subsequently, Ford filed additional supplements to his petition (Docs. 16, 22, 26).

## II. LEGAL STANDARD

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A court may grant relief under 28 U.S.C. § 2255, but the statute "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, collateral attack limits a movant's allegations to those of constitutional or jurisdictional magnitude, or those containing factual or legal errors "so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation omitted); *see also* 28 U.S.C. § 2255(a).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Ford first claims that his trial counsel failed to render constitutionally adequate assistance. In *Strickland v. Washington*, the Supreme Court set forth a two-pronged test for determining whether a convicted defendant has received the ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court held that a petitioner cannot establish

4

the ineffective assistance of counsel unless he demonstrates (1) that counsel's performance was deficient, such that counsel did not render reasonably effective assistance as measured by prevailing professional norms; and (2) that he was prejudiced by the deficiency, i.e., that there exists a reasonable probability that but for counsel's alleged acts or omissions, the results of the proceedings would have been different. *See Strickland*, 466 U.S. at 687-88, 694; *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (applying *Strickland* test to § 2255 claims). The failure to satisfy either prong of *Strickland* requires dismissal of the claim and relieves the reviewing court of a duty to consider the other prong. *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009); *see also Strickland*, 466 U.S. at 697.

      **i.**      **Counsel's advice**

Ford first alleges that counsel was ineffective for urging him to plead guilty based on the weight of the Government's evidence against him, predicting that Ford would lose at trial and failing to represent Ford "to his fullest ability." However, the record demonstrates that even though counsel (correctly) assessed the weight of evidence against Ford as overwhelming, counsel nonetheless secured acquittals at trial for two robberies and their corresponding firearm counts (Doc. 31 in No. 1:13-CR-98). Accordingly, Ford has failed to demonstrate that counsel rendered ineffective assistance in his advice or in the zealousness of his representation of Ford.

      **ii.**      **Armed career criminal classification**

Ford next argues that counsel failed to dispute his armed career criminal classification. However, Ford had four prior Tennessee convictions for aggravated robbery, and controlling precedent holds that such offenses constitute armed career criminal predicates. *See, e.g.*, *United States v. Mitchell*, 743 F.3d 1054, 1058-60 (6th Cir. 2014) (holding Tennessee robbery convictions categorically qualify as violent felonies). Thus, counsel had no basis to object. Counsel is not ineffective for failing to raise an issue that lacks merit. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th

5

Cir. 2001); *Chapman v. United States*, 74 F. App'x 590, 593, 2003 WL 22114015, at *2 (6th Cir. 2003) (counsel "is not required by the Constitution to raise frivolous defenses or arguments to avoid a charge of ineffective representation").

### iii. Direct appeal

Finally, Ford complains that counsel did not raise all of the issues he suggested for his direct appeal. While the decision whether to appeal belongs solely to the criminal defendant, subsequent decisions about which issues to raise on appeal rest with counsel, who is better suited to estimate the probability of success on any given argument. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) ("Th[e] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting *Jones*, 463 U.S. at 751-52)). Therefore, in order to prevail on such a claim, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than the issues counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

In *United States v. Jones*, the Supreme Court held that the attachment of a Global Positioning System ("GPS") device to a vehicle, and the use of that device to monitor the vehicle's movements, was a search within the meaning of the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 404 (2012). Ford argues that his counsel failed to properly argue *Jones* to establish that the attachment of a GPS to his vehicle without a warrant violated the Fourth Amendment.

However, this Court considered *Jones* in denying Ford's suppression motion, finding that the installation violated the Fourth Amendment, but that as there was no binding precedent prohibiting the practice at the time the warrantless GPS was installed while there *was* precedent to suggest that such practice was permissible, the good-faith exception to the exclusionary rule allowed consideration of the evidence obtained from the warrantless GPS technology (Docs. 70,

75 in No. 1:11-CR-42). Ford's attorney raised the issue on direct appeal, where the Sixth Circuit noted that "*Jones* was not decided until 2012, well after the GPS tracking device was placed on Ford's vehicle on April 23, 2011. Thus, if law enforcement officials acted in good-faith reliance on binding appellate precedent when they applied the GPS tracking device without first obtaining a warrant, the evidence that they obtained as a result of their monitoring of the device could be properly admitted at trial" (Doc. 46 p.3, *United States v. Ford*, No. 14-5584 (6th Cir. Apr. 15, 2015)). The Sixth Circuit rejected Ford's claim, finding that this Court "properly found that the detective acted in good-faith reliance that his conduct was lawful when he placed the GPS tracking device on Ford's vehicle" (*id*. at 4). Accordingly, this claim was presented on direct appeal and rejected on its merits by the Sixth Circuit. Ford cannot establish that he received the ineffective assistance of counsel in connection with this claim.

### B.     Prosecutorial misconduct

Ford maintains that the prosecutor purposely misled the jury by stating in his opening how a GPS was placed on Ford's vehicle "as if it was lawful" (Doc. 1 p.5). However, the legality of the GPS tracking device had already been addressed by the Court in its suppression ruling, and, therefore, the issue of its legality was not properly before the jury. Moreover, in his opening, the prosecutor stated:

> Detective Taylor suspects the defendant is the one committing these robberies, and he puts a tracker on the defendant's car so he can pull up and see where the defendant's vehicle is at any point in time . . .
>
> [After the Cash Express robbery,] Detective Taylor is alerted. . . [and he] is able to pull up the tracker information, and he notes that at the time of the robbery the defendant's car was within two or three hundred yards of where the robbery occurred. . . . [H]e finds out where the defendant is on the tracker, pulls it up realtime, and they go out and arrest the defendant. . .
>
> Taylor had also checked the tracker and seen that after the robbery it appeared the defendant went to [the] house where he was staying with his mom.

(Doc. 40 p. 11-12 in No. 1:13-CR-98). Ford has not identified any factual inaccuracy in the prosecutor's statements. Therefore, the Court finds his allegations cannot be accepted as true. *See, e.g., Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008).

Ford enumerates additional allegations of prosecutorial misconduct, claiming that "the prosecutor harassed potential witnesses, failed to turn over discovery materials, manipulated [the] jury selection process, made deals to purchase false testimony, repeatedly made highly prejudicial and [in]flammatory comments during the opening/closing statement[]s, improperly bolster[ed] government witnesses[,] refer[ed] to facts not in evidence, [and] sho[t] evidentiary harpoon[]s during trial" (Doc. 6 p. 7). However, Ford sets forth no facts in support of these conclusory allegations. It is well-settled that a petitioner must set forth adequate facts that entitle him to relief. *See, e.g.*, *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing," much less relief). Inasmuch as Ford has failed to provide any factual support for his claims, this issue will be dismissed.

### C. *Johnson* challenges

#### i. **Armed career criminal**

Ford was sentenced as an armed career criminal under the Armed Career Criminal Act ("ACCA"), which requires a 15-year minimum sentence for a felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). The statute defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"); (2) "is burglary, arson or extortion, involves the use of explosives" (the "enumerated-

offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

Ford argues that his convictions no longer qualify as violent felonies after the Supreme Court's decision in *Johnson v. United States*, in which the Court struck down the residual clause of the ACCA as violative of due process. *Johnson*, 135 S. Ct. at 2563. However, the Court in *Johnson* held that its decision did not apply "to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id*. Therefore, "a defendant can still receive an ACCA-enhanced sentence based on the statute's use-of-force clause or enumerated offense clause." *United States v. Priddy*, 808 F.3d 676, 683 (5th Cir. 2015); *see also United States v. Smith*, 817 F.3d 492, 493 (6th Cir. 2016) (rejecting vagueness challenge to the ACCA's enumerated-offense clause).

Ford was classified as an armed career criminal because he had four prior Tennessee aggravated robbery convictions (Doc. 32 ¶58 in No. 1:13-CR-98). Tennessee robbery convictions categorically qualify as violent felonies under the ACCA's use-of-force clause. *United States v. Mitchell*, 743 F.3d 1054, 1058-60 (6th Cir. 2014); *see also United States v. Taylor*, 800 F.3d 701, 719 (6th Cir. 2015) ("[T]he Supreme Court's holding in *Johnson* leaves unaffected this Court's determination that simple robbery in Tennessee is a predicate offense under "the use of physical force clause."). Therefore, this claim fails to warrant relief.

  ii.  **Section 924(c) convictions**

In *Sessions v. Dimaya*, the Supreme Court held that the Immigration and Nationality Act's definition of "crime of violence," codified at 18 U.S.C. § 16(b), was unconstitutionally vague. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018). Ford claims that the reasoning of the Supreme Court's holdings in *Johnson* and *Dimaya* also invalidate the residual clause in 18 U.S.C.

§ 924(c)(3)(B)'s definition of a crime of violence, and thus, require vacatur of his § 924(c) convictions.

Under 18 U.S.C. § 924(c), it is unlawful to use or carry a firearm during and in relation to a "crime of violence or drug trafficking crime," or to possess a firearm "in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A). A "crime of violence" under § 924(c) is "an offense that is a felony and" either (1) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "use-of-force clause"); or (2) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3).

The Court finds that the Sixth Circuit has expressly held that *Johnson*'s reasoning does not invalidate the differently-worded residual clause of § 924(c)(3)(B), noting, in part, that the residual clause of § 924(c) is limited to use of physical force "in the course of" committing the offense. *United States v. Taylor*, 814 F.3d 340, 376-79 (6th Cir. 2016). Accordingly, Ford's claim that he is entitled to relief from his § 924(c) convictions under the reasoning of *Johnson* is without merit.[2]

Moreover, because the Supreme Court expressly stated in *Johnson* that it was not invalidating the ACCA's use-of-force clause, *Johnson* has no application to the similarly-worded use-of-force clause in § 924(c)(3)(A). *Johnson*, 135 S. Ct. at 2563. Therefore, even if *Johnson* did invalidate the residual clause of § 924(c)(3)(B), Ford's conviction would nonetheless be valid under § 924(c)(3)(A)'s use-of-force clause. A Hobbs Act robbery by definition involves the taking of property "by means of actual or threated force, or violence, or fear of injury," and therefore, categorically involves the use, attempted use, or threatened use of such force. 18 U.S.C. § 1951(b)(1); *see also United States v. Richardson*, 906 F.3d 417, 425 (6th Cir. 2018) (confirming

---

[2] The Court notes that the Supreme Court recently granted certiorari to determine whether § 924(c)(3)(B) is unconstitutionally vague. *See United States v. Davis*, No. 18-431, 139 S. Ct. 782 (2019).

post-*Dimaya* that Hobbs Act robbery continues to be predicate "crime of violence" under either clause of § 924(c)); *In re Fleur*, 824 F.3d 1337, 1340-41 (11th Cir. 2016) (finding Hobbs Act robbery categorically qualifies as a crime of violence under the use-of-force clause in 18 U.S.C. § 924(c)(3)(A)). Accordingly, the Supreme Court's holding in *Johnson* and its progeny do not provide Ford with a basis on which to challenge the validity of his convictions.

### D. Remaining claims

#### i. Timeliness

On or about September 28, 2016, Ford supplemented his petition to complain about the sufficiency of the indictment against him, and that the Court impermissibly engaged in fact-finding in violation of *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013). The Court finds that these amendments were filed outside of the one-year statute of limitations, which expired on or about July 14, 2016. 28 U.S.C. § 2255(f); *see also Clay v. United States*, 537 U.S. 522, 524 (2003) (holding judgment becomes "final" for post-conviction relief purposes when time for filing a petition for certiorari contesting appellate court judgment expires); S. Ct. R. 13.1 (allowing parties 90 days to seek certiorari review from lower court judgment).

Amendments made after the statute of limitations has run relate back to the original pleading under Federal Rule of Civil Procedure 15(c)(1)(B) if the amended pleading "arose out of the [same] conduct, transaction, or occurrence" as that of the original pleading. Fed. R. Civ. P. 15(c)(1)(B). However, "[a] party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired." *United States v. Clark*, 637 F. App'x 206, 208–09 (6th Cir. 2016) (citation omitted). Here, the Court finds Ford's claims do not relate back to his timely-filed § 2255 motion, and they are deemed untimely. *See Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008) (noting an untimely amended motion should be denied if it does not relate

back to the date of the original pleading). Notwithstanding this procedural ruling, the Court, out of an abundance of caution, will alternatively consider the merits of Ford's claims.

    ii.  **Merits**

      a)  **Indictment**

Ford claims that the United States should have specified the exact subsection under 18 U.S.C. § 1951 he was charged under, and that since it did not, the indictment against him was defective and failed to charge an offense. However, Hobbs Act robbery is criminalized in a single subsection, i.e., 18 U.S.C. § 1951(a), which states as follows:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

The other subsections of § 1951 merely define statutory terms and clarify the statute's relationship to other statutes, and thus, Ford was necessarily charged with a violation of 18 U.S.C. § 1951(a). The indictment in this cause specifically charged Ford with repeatedly violating § 1951 "by robbery," and he is not entitled to further specificity (Doc. 8 in No. 1:13-CR-98). Thus, the record rebuts Ford's claim that the indictment was insufficient or defective.

      b)  *Alleyne v. United States*

Ford argues that the imposition of consecutive sentences for his § 924(c) offenses runs counter to the holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), because it resulted in a longer aggregate term of imprisonment than he would have received if those sentences were ordered to run concurrently. *See Alleyne*, 133 S. Ct. at 2155, 2160 n.1 (holding that any fact that increases a statutory mandatory minimum, other than the fact of a prior conviction, is an element of the offense which must be found by a jury or admitted by the defendant). Here, the consecutive

mandatory minimums were authorized by the jury's verdict, in that the jury found Ford guilty of four separate § 924(c) offenses (Doc. 31 in No. 1:13-CR-98). Accordingly, *Alleyne* does not provide a basis to reduce Ford's sentence.

IV. **CERTIFICATE OF APPEALABILITY**

When considering a § 2255 motion, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Ford must obtain a COA before he may appeal the denial of his § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

V. **CONCLUSION**

For the reasons stated herein, Ford has failed to establish any basis upon which § 2255 relief could be granted, and his motion will be **DENIED**. A COA from the denial of his § 2255 motion will be **DENIED**.

**An Order Will Enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**